UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JESSE JAMES WOLFGRAM,

        Plaintiff,

v.

        Case No. 24-cv-1265-pp

PAUL TIEGS and TANNER DOXTATOR

        Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 7)**

      In October 2024, the plaintiff—representing himself—filed a complaint against the Sheboygan Police Department, alleging that his rights and those of his disabled mother had been violated in October 2022 during an incident at a motel in Sheboygan Falls. Dkt. No. 1. He also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. On February 24, 2025, the court issued an order granting the plaintiff's motion for leave to proceed without prepaying the fee and screening the complaint. Dkt. No. 4. In screening the complaint, the court explained that the complaint did not state claims for which a federal court could grant relief, and explained why the police department was not a suable entity. Dkt. No. 4 at 6–14. The court dismissed the complaint without prejudice but gave the plaintiff an opportunity to file an amended complaint by April 30, 2025. Id. at 14. On that date—April 30, 2025-- the court received the amended complaint. Dkt. No. 7. This order screens that amended complaint.

## I. Screening Amended Complaint

As it was required to do with the original complaint, the court must decide whether the amended complaint alleges claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that he is entitled to relief. Fed. R. Civ. Po. 8(a)(2). The court must accept as true the *factual* allegations in the complaint, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (20009) (citation omitted). A plaintiff does not need to plead every fact supporting his claims; he needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." United States *ex rel.* v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). Because the plaintiff is representing himself, the court must liberally construe the allegations of his complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Additionally, federal courts, like this one, have limited jurisdiction. A federal court has jurisdiction to consider and decide cases that involve violations of federal laws or the federal Constitution. 28 U.S.C. §1331. Federal courts also have jurisdiction to consider and decide lawsuits between citizens of different states, if the amount in dispute is more than $75,000. 28 U.S.C.

2

§1332. If a case does not fall under either of those categories, the plaintiff must seek relief in state court.

 A. <u>Facts Alleged in the Amended Complaint (Dkt. No. 7)</u>

The amended complaint names two individual defendants: Paul Tiegs and Tanner Doxtator of the Sheboygan Falls Police Department. It alleges that on October 8, 2022, the defendants, Tiegs and Doxtator subjected the plaintiff to a wrongful arrest, excessive force and police brutality. Dkt. No. 7 at ¶¶1, 10. The amended complaint explains that on October 8, 2022, the plaintiff was at the AmeriVu Inn and Suites on Main Street North in Sheboygan Falls, along with his mother, Susan, and his close friend, Michael. <u>Id.</u> at ¶1. It says that the plaintiff and Michael were helping to move his mother out of her apartment; the plaintiff says that he was driving a U-haul. <u>Id.</u> The complaint alleges that after Michael's father helped Michael load the truck, the defendant, his mother and Michael went to the AmeriVu Inn and got into the hot tub. <u>Id.</u>

The complaint alleges that while the plaintiff, his mother and Michael were in the pool area, he and his mother were "sexually harassed and intimidated by a third party aggressor." <u>Id.</u> at ¶2. It alleges that the plaintiff called 911, as did a hotel employee named Brittany; the complaint alleges that Brittany also was assaulted by the third party while she was trying to protect the plaintiff and his party by getting the third party out of the pool room and locking the plaintiff's party "in there" until the police arrived so that the third party could not "come after" the plaintiff and his party. <u>Id.</u>

The amended complaint alleges that Lieutenant Tiegs and Officer Doxtator—both of the Sheboygan Falls Police Department—arrived, but "did not adequately investigate the third-party aggressor" and did not "control the situation." <u>Id.</u> at ¶3. It alleges that the "intoxicated aggressor" threatened the

3

plaintiff a third time after the defendants arrived, by coming after the plaintiff at the top of the stairs. Id. at ¶4. The amended complaint asserts that the plaintiff ran down the stairs to the defendants for help, but that Doxtator began to throw him down the stairs. Id. The plaintiff got back to his feet and "physically submitted to the police with [his] hands up and announced that [he] had a disability." Id. The amended complaint says that the plaintiff "screamed in fear for [his] life, 'Please don't slam me, I'm the one who called 911 for help!'" Id. It alleges that Tiegs nonetheless threw the plaintiff to the ground "hard," causing him bodily harm. Id. It says that the plaintiff could feel the "weight on [his] back crushing [his] body into the pavement suffocating [his] lungs," and that he couldn't breathe. Id. The plaintiff's mother and Michael were "screaming to get off him he's disabled." Id.

The amended complaint alleges that the defendants wrongfully arrested the plaintiff, id. at ¶4, and that they handcuffed him and put him in the squad car, id. at ¶5. It asserts that the plaintiff asked the officers for medical treatment, but that they denied that request "by sending away an early ambulance that [the plaintiff] requested for immediate medical help to treat [him] and transport [him] to the Aurora Medial Center E.R." Id. at ¶5. It asserts that when "a later ambulance arrived, the officers failed to properly assist [the plaintiff] to the ambulance while [he] was in their custody, allowing [him] to fall to the ground." Id. at ¶6. The amended complaint alleges that the plaintiff had to be taken to the ambulance on a stretcher. Id.

The amended complaint explains that the plaintiff "had physical disabilities that substantially limited the major life activities of breathing, walking, performing manual tasks, working full time, digestive function, bowel function, bladder function, and respiratory function." Id. at ¶9.

4

The amended complaint alleges that the defendants issued false police reports—specifically, that they falsely reported that the plaintiff was intoxicated the evening of the incident. Id. at ¶11. It alleges that the defendants "obscured body cam mic footage to conceal the third party aggressor's behavior," and that the defendants characterized the plaintiff as the aggressor even though everything the plaintiff did constituted self-defense. Id. That included the plaintiff's actions in "protecting [his] pelvic floor in self defense from unnecessary use of excessive force before being slammed then crushed into unfinished concrete with the defendants knees in [his] back suffocating his lungs." Id.

The amended complaint alleges that after the plaintiff was sent away in the ambulance, "the officers evicted [his] mom out of the Amerivu Inn and Suites with no place to go and no ride while letting the third party aggressor remain on the premises still not in custody . . . ." Id. The amended complaint references a stroke the plaintiff's mother had had, and the fact that she was disabled. Id. It alleges that the plaintiff's mother asked multiple times for the third party aggressor to be arrested. Id.

The amended complaint alleges the plaintiff has suffered, among other things, distress, psychological damage, anxiety, sleeplessness and ongoing medical treatment as a result of the defendants' conduct. Id. at ¶7. It asserts that the plaintiff has had fifteen surgeries and procedures since October 2022, including reconstructive surgeries and procedures "for damage to [his] bones, organs, lungs, muscles, and nerves." Id. It asserts that he is "subject to ongoing surgical procedures and rehabilitation" and that he is on seven medications to treat issues caused by the defendants. Id.

5

Beyond the alleged physical and psychological damages, the amended complaint alleges that the plaintiff has "miss[ed] a substantial amount of [his] part time job resulting in lost wages and income;" it asserts that the plaintiff was earning "upwards of $1,000+ per month" with Liveops Agent Services, LLC before the incident, and that the plaintiff has been unable to keep a steady part-time position or be able to take care of himself at home without assistance. Id. at ¶8.

The amended complaint alleges that the defendants violated Title II of the Americans with Disabilities Act, asserting that the plaintiff is a person with a disability as defined by 42 U.S.C. §12102. Id. at ¶9. It alleges that the defendants violated the Fourth Amendment and 42 U.S.C. §1983, alleging police brutality, excessive force, and wrongful arrest. Id. at ¶10. It asserts that the defendants issued false police reports and concealed evidence. Id. at ¶11. It appears to allege that the defendants interfered with the plaintiffs' ability to care for his mother. Id. It alleges that the defendants interfered with the resolution of Sheboygan County Case No. 2022CM000644. Id. at ¶12. For relief, the plaintiff seeks "damages for all of these injuries in an amount to be determined at trial and for punitive damages." Id. at ¶13.

B.  Analysis

Title II of the Americans with Disabilities Act states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. The Seventh Circuit has explained that "[w]hether Title II applies to law enforcement investigations and arrest, and if so to what extent, is an open question in this circuit." Culp v. Caudill, 140 F.4th 938, 942 (7th

Cir. 2025) (quoting King v. Hendricks Cnty. Comm'rs, 954 F.3d 981, 988 (7th Cir. 2020)). Without deciding whether Title II applies in the law enforcement arrest context, the Seventh Circuit has held that to prevail on a claim involving law enforcement investigations and arrest, a plaintiff must show that but for the disability, he would not have been subject to the adverse action. Id. at 943 (citing King, 954 F.3d at 989).

There are several deficiencies with the plaintiff's ADA claim. First, it is not clear that the plaintiff is a "qualified individual" under the ADA. The ADA defines a "qualified individual" as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Nawara v. Cook C'nty, 132 F.4th 1031, 1035 n.2 (7th Cir. 2025) (quoting 42 U.S.C. §12111(8)). "Not all impairments or conditions qualify as a disability within the meaning of the ADA." Rooney v. Koch Air, LLC, 410 F.3d 376, 381 (7th Cir. 2005) (citing Dalton v. Subaru-Isuzu Auto., 141 F.3d 667, 675 (7th Cir. 1998)). "To be disabled, an individual must be so limited in one or more major life activities that [he] is impaired in [his] ability to 'perform the variety of tasks central to most people's lives.'" Id. (quoting Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 201 (2002)). Although the amended complaint states that the plaintiff "was a person with a disability as defined in 42 U.S.C. Section 12102," dkt. no. 7 at ¶9, it does not identify the plaintiff's disability or disabilities. It describes the impact the disabilities had on the plaintiff, but does not actually identify the disabilities. The plaintiff attached to the complaint an undated letter from someone named Jeanie Crawford, identifying herself as a physical therapist; the letter says that the plaintiff had been coming to Crawford for therapy "for

7

pelvic floor dysfunction, back and neck pain." Dkt. No. 7-1 at 1. But the letter does not contain a diagnosis.

Even if whatever disabilities the plaintiff has qualify as disabilities for the purposes of the ADA, the amended complaint does not allege that but for the plaintiff's disabilities, he would not have been subject to the alleged adverse action (the alleged excessive force and alleged false arrest) or that the plaintiff did not receive some benefit to which he was entitled. The amended complaint does not allege that the defendants used force on the plaintiff *because* he was disabled, or that they falsely arrested him *because* he was disabled. Rather, the amended complaint alleges that during the incident, he "announced" that he had a disability, but that "[d]espite being informed [of the plaintiff's disabilities], the defendants failed to identify or accommodate [his] disabilities before, during and after [his] arrest." Dkt. No. 7 at ¶10. This is not sufficient to state a claim for a violation of the ADA. The fact that the plaintiff has physical disabilities may impact his other claim and any potential damages, but the plaintiff has not stated a claim under the ADA. The court will not allow the plaintiff to proceed with this claim.

To state a claim for a violation of one's constitutional rights under 42 U.S.C. §1983, a plaintiff must allege that a person deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). "[A] § 1983 defendant acts under color of state law when he abuses the position given to him by the State." DiDonato v. Panatera, 24 F.4th 1156, 1159–60 (7th Cir. 2022) (citing West v. Atkins, 487 U.S. 42, 49–50 (1988)).

8

The amended complaint alleges that the defendants violated the plaintiff's Fourth Amendment rights by using excessive force (the plaintiff also references police brutality, which is encompassed by excessive force) and by wrongfully arresting him. Both excessive force and wrongful arrest are cognizable Fourth Amendment violations.

"Although police officers may use force to seize another person under appropriate circumstances, the Fourth Amendment protects against the use of excessive force." Taylor v. City of Milford, 10 F.4th 800, 806 (7th Cir. 2021) (citing Weinmann v. McClone, 787 F.3d 444, 448 (7th Cir. 2015)). "'The question whether a particular use of force has crossed the constitutional line is governed by the Fourth Amendment, which prohibits unreasonable seizures.'" Id. (citing Weinmann, 787 F.3d at 448 and Graham v. Connor, 490 U.S> 386, 395 (1989)). Courts analyze excessive force cases "under an objective reasonableness standard." Id.

The amended complaint sufficiently alleges that the defendants were acting under color of state law, by alleging that they were Sheboygan Falls police officers. Dkt. No. 7 at ¶¶3, 4. It alleges that even though the plaintiff had done nothing wrong—and, in fact, was the person who'd called 911—defendant Doxtator threw the plaintiff down the stairs when the plaintiff was attempting get the defendants' help. Id. at ¶4. It alleges that defendant Tiegs slammed the plaintiff to the ground, again without justification. Id. at ¶4. The amended complaint also alleges that the plaintiff felt a weight on his back, crushing him and preventing him from breathing, although he does not say what this weight was or who applied it. Id. At the screening stage, the court must accept these allegations as true. They are sufficient to state an excessive force claim against

9

both defendants, because they allege that the defendants unreasonably seized the plaintiff.

"A § 1983 claim for false arrest cannot succeed if the officer had probable cause to make the arrest." Peterson v. Pedersen, 140 F.4th 421, 426 (7th Cir. 2025) (citing Mwangangi v. Nielsen, 48 F.4th 816, 825 (7th Cir. 2022)). An officer has probable cause to arrest someone "when a reasonable officer with all the knowledge of the on-scene officers would have believed that the suspect committed an offense defined by state law." Id. (quoting Jump v. Village of Shorewood, 42 F.4th 782, 789 (7th Cir. 2022)). The amended complaint alleges that the defendants handcuffed the plaintiff and put him in a squad car even though the plaintiff had done nothing wrong and even though he told the defendants that he was the person who had called 911. Id. at ¶5. At the screening stage, these allegations are sufficient to state a claim for false arrest, because the allegations amount to a claim that the defendants had no cause—probable or otherwise—to arrest the plaintiff.[1]

The amended complaint also implies a claim for false arrest based on fabricated evidence—the plaintiff alleges that the defendants falsely stated that he was intoxicated and that they obscured their body cam mics. "A claim for a

---

[1] The plaintiff mentioned in the amended complaint State v. Wolfgram, 22CM644 (Sheboygan County Circuit Court); he attached to the amended complaint a witness list for that case. Dkt. No. 7-1 at 7. A review of the publicly available docket shows that a complaint was filed against the plaintiff on November 15, 2022; he has been charged in Sheboygan County Circuit Court with misdemeanor disorderly conduct and resisting/obstructing; the case is pending, with a scheduling conference set for January 23, 2026. wcca.wicourts.gov. The docket shows that on November 21, 2022, the Sheboygan County Circuit Court judge found probable cause. The plaintiff should be aware that the fact that this court is allowing him to proceed on a false arrest claim does not prevent the defendants from arguing here in federal court that they had probable cause for the arrest.

false arrest or pretrial detention based on fabricated evidence implicates the Fourth Amendment protection against seizures without probable cause . . . ." Zambrano v. City of Joliet, 141 F.4th 828, 830 (7th Cir. 2025). Again, accepting the allegations in the complaint as true at the screening stage, the court finds that the amended complaint states sufficient facts to allow the plaintiff to proceed on a false arrest claim.

The amended complaint says that the defendants' alleged actions prevented the plaintiff from protecting his disabled mother. The plaintiff does not identify a federal or state cause of action related to this allegation, and the court is not aware of any. This allegation likely relates more to potential damages than to a substantive claim.

Finally, the plaintiff alleges that the defendants' actions have "knowingly and unreasonably delayed the resolution of Sheboygan County Case Number 2022CM000644." Dkt. No. 7 at ¶12. The amended complaint references the "wrongful perpetuation of this criminal matter." Id. This allegation seems to relate to the plaintiff's false arrest claim, and goes more to potential damages than to a separate substantive claim.

## II. Conclusion

The court **ALLOWS** the plaintiff to proceed on his Fourth Amendment claims of excessive force and wrongful arrest.

The court **ORDERS** that the plaintiff's ADA claim is **DISMISSED**.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint and this order on defendants Tiegs and Doxtator of the Sheboygan Falls police department under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the

court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that the defendants must file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. It is the plaintiff's responsibility to notify the court if he changes addresses; if he does not keep the court advised of his address the court may dismiss this case without further notice.

Dated in Milwaukee, Wisconsin this 7th day of November, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**